Anoush Hakimi (SBN 228858)
anoush@handslawgroup.com
Peter Shahriari (SBN 237074)
peter@handslawgroup.com
Laura Steven (SBN 332168)
laura@handslawgroup.com
Valerie Bradbury (SBN 249868)
valerie@handslawgroup.com
Lauren Davis (SBN 294115)
lauren@handslawgroup.com
**THE LAW OFFICE OF HAKIMI & SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028
Telephone: (888) 635-2250
Facsimile: (213) 402-2170

Attorneys for Plaintiff,
**TERESA HICKS**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

TERESA HICKS, an individual,

      Plaintiff,

    v.

ETE PROPERTIES, LLC, a California limited liability company; and DOES 1-10,

      Defendants.

**COMPLAINT FOR VIOLATION OF AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, *et seq.*; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51, *et seq.***

DEMAND FOR BENCH TRIAL

VER

**Landlords demonize access cases and often deviously foist the overdue remediation costs onto business owners who lease their land, all the while protesting in litigation, tying up the Court. The secret is out.**

Plaintiff Teresa Hicks (hereinafter referred to as "Plaintiff,") complains of ETE Properties, LLC, a California limited liability company; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.    INTRODUCTION: THE CROSSROADS OF CIVIL RIGHTS AND PRIVATE INFRASTRUCTURE REFORM

The landlord community has demonized ADA lawsuits in order to avoid compliance with Federal law. Landlords often use heavy handed leases which unfairly and secretly foist the responsibility of access law compliance of *their* property onto the shoulders of the unfortunate business owner/lessor who does not see the landmine in the lease. Inevitable lawsuits by customers *against landlords who own the non-compliant property* asking for legally required features in the property are then mischaracterized as attacks on the unfortunate business owner/lessor by dastardly customers. This cynical and unfair tactic has caused administrative headaches for the courts which must deal with emotional and unnecessary litigation and has obscured the truth. In reality, the landlords' goal is to to save money by failing to bring the property into compliance and then when caught, blame the disabled customer and force the remediation costs upon the business owner. The landlord is the predator. Here are the facts:

Mass Non-Compliance with the ADA. Many places are dilapidated and need remediation. Non-compliance is rampant. Many if not most places are not fully compliant with access laws. Many properties have terribly dilapidated pavement, vandalized or missing access signage, incorrectly designed paths and have restrooms which are unusable for disabled people. These problems are common and egregious in many places.

No Government Oversight. The government will not provide inspections or monitoring of the vast swaths of privately owned land and buildings used by people. Incorrectly designed features will stay non-compliant. Many features will also erode with time from long term heavy usage, weather/climate ware, vandalism, etc.

Private Infrastructure Reform. The remediation and improvement to these properties is good for business. Improvements which better the land and bring the property into compliance with Federal law increase the property value and make the areas more appealing for customers.

Remediation Costs are Tiny Compared to the Wealth of the Landlord.

The costs of remediation in many instances are a tiny fraction of the income of most landlords, who typically own multiple commercial properties and are in the landlord business. The landlord that owns one property is indeed a rare creature in California. The value of the building, improvements and land for most properties, coupled with other properties owned, dwarfs the negligible expenses of

remediation, which incidentally should have been made already without the need for a lawsuit. The lawsuit is an unfortunate byproduct of the landlord's original refusal to follow the law. The landlord saved and avoided those costs until the case.

<u>Need for these cases</u>. Despite the history of access cases there is still <u>mass</u> non-compliance. The deterrent effect has not been enough to bring about remediation such that these cases discontinue and are growing. Until the legislative intent arises to change the law so that government inspectors appear on the streets monitoring and enforcing access laws, these cases will be essential and important to giving access to all and to improving the landscape for all customers.

## II.   PARTIES

1.      Teresa Hicks suffers from degenerative disk disease which causes her constant pain and makes it difficult for her to move and walk.  She has tingling and numbness in her feet and legs. She also has limited range of movement. She is a disabled person entitled to the protections of the California Unruh Civil Rights Act (UCRA) (see Cal. Civ. Code §§ 51, et seq., 52, et seq.), the Americans with Disabilities Act (ADA) (see 42 U.S.C. § 12102, et seq.), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident with physical disabilities.

2.      Defendant ETE Properties, LLC, a California limited liability company; owned the property ("Property") located at 653 W. Foothill Blvd., Upland, CA 91786, at all relevant times.

3.    There is a business establishment on the Property named "Highlander Natural Foods" (hereinafter, "the business").

4.    Does 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants.  Plaintiff is unaware of the true names and capacities of Defendants sued herein as Does 1 through 10, inclusive, and therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

5.    Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, representative partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants; and were acting within the course and scope of that relationship.  Upon information and belief, Plaintiff alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining Defendants.

6.    Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

### III.    JURISDICTION & VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* (the "ADA").

8.     Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the ADA.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and the Plaintiff's cause of action arose in this district.

## IV.   FACTS

10.     The Property and/or the business owned, leased, and/or operated by Defendants is a facility which is open to the public and includes a business establishment.

11.     The Property has been newly constructed, and/or underwent remodeling, repairs, or alterations since 1992, and Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration, or failed to maintain accessible features in operable working condition.

12.     Plaintiff visited the Property during the relevant statutory period on two (2) separate occasions, on December 2021 and April 2022 to patronize the business on the Property.

13.     The premises violated applicable California and federal construction-related accessibility standards, including Title 24 of the California Code of Regulations (California Building Standards Code), Part 36 of Title 28 of the Code of Federal Regulations (28 CFR Part 36), the ADA Standards for Accessible Design ("ADAS"), and the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG").

14.     Defendants did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

15.     Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

16.     Parking, paths of travel, signage, and other architectural amenities for patrons visiting the Property are among the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

17.     However, there are (were) inadequate accessibility features for disabled persons at the Property.  Defendants' facilities do not comply with the ADAS, ADAAG, and/or the California Building Code ("CBC").

18.     When Plaintiff visited the Property, she experienced multiple access barriers, including barriers related to parking, paths of travel, and signage.

Plaintiff encountered the following barriers at Defendants' facilities:

**The property which serves Highlander Natural Foods has many**

7
COMPLAINT

**violations of the ADAAG which are barriers to somebody like Plaintiff. Some of the pavement distresses and slopes are from damage (such as cracks in the asphalt), some from bad design or installation (for example uneven pavement). There are many other problems as well.**

**The designated parking space has some cracking and slopes. The paint for the access aisle and designated parking space are faded, making it hard to locate. There are many other problems as well.**

**VIOLATION of 1991 ADAS § 4.3.2(1); 2010 ADAS § 206.2.1; 2010 CBC § 1114B.1.2; 2019 CBC § 11B-206.2.1.**  <u>(Exterior route of travel.)</u>  An accessible route of travel is not provided to all entrances and portions of the building, to all entrances of the Property, and/or between the building and a public way.  Plaintiff needs a dedicated path of travel, free of obstructions and vehicles, where (on which) Plaintiff can travel.  It is dangerous for Plaintiff to navigate without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 1991 ADAS §§ 4.1.2(1), 4.3.2(1); 2010 ADAS §§ 206.1, 206.2, 206.2.1, 206.2.2, 206.2.4; 2010 CBC § 1114B.1.2; 2010 CBC § 1127B.1; 2019 CBC §§ 11B-206.2.1, 11B-206.2.2, 11B-206.2.4.**

<u>(Accessible route of travel.)</u>  At least one accessible route shall be provided

within the site from accessible parking spaces and accessible passenger loading zones; public streets and sidewalks; and public transportation stops to the accessible building or facility entrance they serve.  At least one accessible route shall connect accessible buildings, accessible facilities, accessible elements, and accessible spaces that are on the same site.  The requisite accessible route of travel is not provided.  There is no accessible route of travel from the designated disabled parking spaces, adjacent access aisle to the business/building entrance. Plaintiff needs an accessible route of travel, with level and smooth ground, free of obstructions and vehicles, whereupon Plaintiff can ambulate.  It is dangerous for Plaintiff to travel these areas without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.  The lack of a safe and accessible route, with a smooth and level surface, denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/ harder for Plaintiff to traverse.

**VIOLATION of 1991 ADAS § 4.1.2(7); 2010 ADAS § 216.6; 2010 CBC § 1127B.3; 2019 CBC § 11B-216.6.**  (Directional signage.)  There is no directional signage showing an accessible path of travel to an accessible entrance.  Plaintiff faces an increased risk of injury if Plaintiff is required to backtrack because Plaintiff cannot find an accessible entrance into the

business/building.  Thus, Plaintiff requires clear signage directing him to any accessible entrance(s).  Accessible entrances should be marked with an International Symbol of Accessibility.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § § 11B-502.8, 11B-502.8.2.**  (Off-street unauthorized parking sign – not posted.)  The tow away sign(s) (white sign stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED ACCESSIBLE SPACES … WILL BE TOWED AWAY") must be posted in a conspicuous place at each entrance to an off-street parking lot (facility), or immediately adjacent to and visible from each designated parking stall (space).  The requisite sign(s) are not posted. Plaintiff must use the designated disabled parking spaces and requires the proper protections of an access aisle and an accessible route of travel to safely access the Property.  Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking spaces will deter others without disabilities from parking there.

**VIOLATION of 1991 ADAS § 4.3.7; 2010 ADAS § 403.3; 2019 CBC § 11B-403.3.**  (Route/path of travel – cross slopes.)  The cross slopes of the route/path of travel are greater than two percent (2%).  It is difficult for Plaintiff to travel on surfaces with excess slopes.  Plaintiff is at risk of falling

when there are surfaces with excess slopes.  The presence of excess slopes
denied Plaintiff full and equal use or access during Plaintiff's visits by
making it difficult and/or uncomfortable for Plaintiff to traverse the
property/route.  The barrier also deterred/deters Plaintiff from visiting the
Property because it would make it difficult and/or uncomfortable for
Plaintiff to walk/traverse the property/route.

**VIOLATION of 1991 ADAS §§ 4.5.2, 4.6.8; 2010 ADAS §§ 302.1, 303.1,
303.2, 303.3, 303.4; 2010 CBC §§ 1120B.2, 1133 B.7.1, 1133B.7.4; 2019
CBC §§ 11B-303.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-303.5**.  (Abrupt
changes in level; uneven ground surface.)  Floor and ground surfaces shall be
stable, firm, and slip resistant.  Changes in level of 1/4 inch high maximum
shall be permitted to be vertical and without edge treatment.  Changes in
level between ¼-inch high minimum and ½-inch high maximum shall be
beveled with a slope not steeper than 1:2. Changes in level greater than 1/2
inch high shall be ramped.  The route of travel, including from the designated
disabled parking space to the entrance of the building/business, have an
uneven ground surface with changes in level exceeding one-half inch (1/2")
(and no ramps are provided).  The route of travel has damaged ground which
is not flush or flat.  The ground has pavement distresses.  The types of
pavement distresses which exist include but are not limited to: alligator

(fatigue) cracking; joint reflection cracking; raveling; stripping; corrugation and shoving; and depressions.  These pavement distresses are made worse and exacerbated by design elements which do not follow the ADAAG. These areas should be fixed immediately because they pose a tripping and/or falling hazard.  Plaintiff, a cannot safely and fully enjoy the premises when such conditions are present.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff's foot, may catch on the uneven ground causing Plaintiff to fall.  These abrupt changes in level pose an increased risk of danger to Plaintiff, as Plaintiff is more likely to trip/fall than someone without disabilities.  The excess changes in level (i.e., uneven ground) denied Plaintiff full and equal use or access during each of Plaintiff's visits by making it difficult/harder and more dangerous for Plaintiff to traverse the property/route.  The excess changes in level (i.e., uneven ground) also deterred/deters Plaintiff from visiting the Property because it would be difficult/harder and more dangerous for Plaintiff to traverse the property/route.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.; 2010 CBC §§ 1129B.3, 1129B.4; 2019 CBC §§ 11B-502.2, 11B-502.6.4.1, 502.6.4.2.** (Faded paint – accessible parking space lines.)  The paint used for the designated disabled parking space is so worn and aged that it cannot (can

hardly) be seen.  This makes it unclear where the actual designated disabled

parking space is, and it makes it difficult for Plaintiff to use the space.

Plaintiff needs to be able to use the designated disabled parking space, which

should be located closest to the entrance and linked to an accessible route of

travel, because it is more difficult for Plaintiff as opposed to non-disabled

persons, to maneuver about the Property.  When the paint for the designated

disabled parking space is worn and aged, there is a greater risk that non-

disabled patrons will park in the designated disabled parking space,

preventing Plaintiff from using it and accessing the business.


**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC §**

**11B-502.2.**  (Width of designated disabled parking space.)  The designated

disabled parking space measured/measures less than nine feet (9') wide,

which made (would make) it difficult for Plaintiff to use the designated

space, and which denied (would deny) plaintiff full and equal use and access

of the full width of the required space.  The paint used for the accessible

parking space lines are so faded and worn that it is difficult to identify the

actual dimensions of the space.  Plaintiff cannot safely disembark from the

vehicle when adequate space is not provided.  Plaintiff needs to be able to

use the designated disabled parking space, which should be located closest to

the entrance and linked to an accessible route of travel, because it is more

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

difficult for Plaintiff, as opposed to non-disabled persons to maneuver about the Property.

**VIOLATION of 2010 ADAS § 502.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.2.**  (Length of designated disabled parking space.)  The designated disabled parking space measures/measured less than eighteen feet (18') long, which made (would make) it difficult for Plaintiff to use the designated space, and which denied (would deny) plaintiff full and equal use and access of the full length of the required space.  The paint used for the accessible parking space lines are so faded and worn that it is difficult to identify the actual dimensions of the space. Plaintiff cannot safely park and disembark from the vehicle when adequate space is not provided.  Plaintiff needs to be able to use the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for Plaintiff, as opposed to non-disabled persons, to maneuver about the Property.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.2; 2010 CBC § 1129B.3; 2019 CBC § 11B-502.3.2.**  (Length of adjacent access aisle.)  The access aisle adjacent to the designated disabled parking space is/was less than eighteen feet (18') long (which is also the required length of the designated

disabled parking space), which denied (would deny) plaintiff full and equal use and access of the full length of the required access aisle.  Plaintiff needs extra space to be able to safely exit the vehicle. When the access aisle is too small, Plaintiff has difficulty disembarking from the vehicle, which poses a greater risk of injury to Plaintiff and can also cause humiliation and/or frustration.

**VIOLATION of 1991 ADAS § 4.6.3; 2010 ADAS § 502.4; 2016 CBC §§ 11B-502.4, 11B-502.3.3; 2010 CBC § 1129B.3.4.** (Slope of designated disabled parking spaces.)  The designated disabled parking spaces have slopes and cross slopes that are greater than two percent (2%).  Given Plaintiff's mobility issues, Plaintiff needs to be able to traverse on a level surface.  Sloped ground surfaces pose risks to Plaintiff, including that Plaintiff's feet may catch on the sloped ground, causing Plaintiff to fall.

**VIOLATION of 2010 CBC § 1129B.4; 2019 CBC § 11B-502.6.4.** (Parking space ground surface signage/International Symbol.)  The paint used for the designated disabled parking space is faded and cannot (can hardly) be seen; thus, there is no compliant surface signage at the designated disabled parking space.  The International Symbol of Accessibility is so faded and worn that it can hardly be seen.  This makes it difficult for

Plaintiff and other patrons to identify or locate the designated disabled

parking space.  When the paint for the International Symbol of Accessibility

is so faded and worn, there is a greater risk that non-disabled patrons will

park in the designated disabled parking space, preventing Plaintiff from

using it and accessing the business.  Plaintiff needs to be able to park in the

space that is nearest to the entrance and designated for disabled patrons.

Plaintiff needs to be able to use an accessible parking space, with an access

aisle, to safely access the Property.  Clear surface signage that explicitly

marks the designated disabled parking space will deter others without

disabilities from parking in the space, so that the space can be available for

Plaintiff's use.


**VIOLATION of 2010 ADAS § 502.3.3; 2010 CBC § 1129B.3.1; 2019**

**CBC § 11B-502.3.3.**  ("NO PARKING" – ground surface signage.)  The

words "NO PARKING," which are required to be painted in the loading/

unloading access aisle, were/are missing (and/or were completely faded such

that the words were no longer visible).  As a result, non-disabled patrons

parked in the loading/unloading access aisle, blocking Plaintiff from being

able to use the access aisle.  Plaintiff needs extra space to be able to safely

exit the vehicle. Plaintiff has difficulty disembarking the vehicle, which

poses a greater risk of injury to Plaintiff and can cause humiliation and/or

frustration.  Plaintiff cannot access the Property safely if Plaintiff cannot use an accessible parking space and adjacent access aisle.

**VIOLATION of 1991 ADAS §§ 4.3.8, 4.5.2; 2010 ADAS §§ 302.1, 303.2, 303.3, 303.4, 403.2; 2010 CBC §§ 1133B.7.1, 1133B.7.4; 2019 CBC §§ 11B-302.1, 11B-303.2, 11B-303.3, 11B-303.4, 11B-403.2.**  <u>(Changes in level – designated disabled parking space.)</u>  There are excess changes in level (of more than one-half inch) within the parking spaces reserved for disabled patrons.  The asphalt is uneven, and has depressions, dips, and divots.  The ground has sunken and cracked parts.  This makes travelling in this area difficult.  These excess changes in level and uneven ground surfaces pose risks to Plaintiff, including that Plaintiff may fall.

**VIOLATION of 2010 ADAS § 216.6, 1991 ADAS § 216.6, 2016 CBC § 11B-216.6.** <u>(Accessible entrance.)</u> In buildings where not all entrances are accessible, the entrance(s) that are accessible and usable by persons with disabilities must be identified. There is no International Symbol of Accessibility at the front entrance. There is no directional signage at inaccessible entrances to indicate the route to the nearest accessible entrance.

19.    Plaintiff personally encountered the foregoing barriers on (and the

foregoing barriers existed during) each and every one of her two (2) visits in 2021 and 2022.

20.     These inaccessible conditions denied Plaintiff full and equal access, and caused him difficulty, humiliation, and/or frustration.

21.     Defendants had actual knowledge that the foregoing architectural barriers prevented access.  Their noncompliance with the ADA Standards, ADA Accessibility Guidelines, and/or the California Building Code was intentional.

22.     Plaintiff intends and plans to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities because of the knowledge of barriers to equal access, relating to Plaintiff's disabilities, that continue to exist at the Property.

23.     Defendants have failed to maintain in working and useable condition those features necessary to provide ready access to persons with disabilities.

24.     Defendants have the financial resources to remove these barriers without much expense or difficulty in order to make their Property more accessible to their mobility impaired customers.  The removal of these barriers is readily achievable.  The United States Department of Justice has determined that removal of these types of barriers is readily achievable.

25.     On information and belief, Plaintiff alleges that Defendants refuse to remove these barriers.

26.     On information and belief, Plaintiff alleges that Defendants' failure to

COMPLAINT

remove these barriers was/is intentional, because the barriers are logical and obvious.  During all relevant times, Defendants had authority, control, and dominion over these conditions; thus, the failure to provide accessible facilities was not a mishap, but rather an intentional act.

27.    These barriers to access are described herein without prejudice to Plaintiff citing additional barriers to access after further inspection by Plaintiff's experts and/or access agents.  *See Doran v. 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to have all barriers that relate to his or her disability removed, regardless of whether he or she personally encountered them); *Thurston v. Midvale Corp*., 39 Cal. App. 5th 634 (2019).

## VIOLATIONS OF THE UNRUH CIVIL RIGHTS ACT

## (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

28.    Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

29.    California Civil Code § 51 states, in part:  "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

30.    California Civil Code § 51 also states, in part: "No business

establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

31.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act (UCRA).

32.     The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA.  Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

33.     Defendants' above-mentioned acts and omissions have violated the UCRA by denying Plaintiff his rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

34.     Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff his rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code § 51(f), 52(a).

35.     Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages.  *See* Cal. Civ. Code § 55.56(a), (c).

//

//

//

20
COMPLAINT

36.     Plaintiff was (actually) damaged by Defendants' wrongful conduct. He seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief compelling Defendants to comply with the Unruh Civil Rights Act.  Note:  Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2.  Damages under the Unruh Civil Rights Act, which provides for actual damages and statutory minimum damages of $4,000 per each offense.

3.  Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to Cal. Civ. Code § 52.

## **DEMAND**

Plaintiff demands a bench trial on all issues so triable.

Dated:  May 3, 2022                    THE LAW OFFICE OF HAKIMI & SHAHRIARI

                                       By:    /s/ Peter Shahriari, Esq.
                                              PETER SHAHRIARI, ESQ.
                                              Attorney for Plaintiff Teresa Hicks

COMPLAINT